**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| Royce R. Heaton and Kathy A. Heaton, | ) | |
| | ) | Civil Action File No.: |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | **COMPLAINT** |
| Equifax Information Services, LLC, | ) | **WITH JURY TRIAL DEMAND** |
| | ) | |
| Defendant. | ) | |
| | ) | |

## PRELIMINARY STATEMENT

This action for damages is based on Defendant's false reporting on Plaintiffs' credit file and/or consumer reports, failures to follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiffs, and failures to conduct reasonable reinvestigations with respect to such information.

## PARTIES

1. Plaintiff, Royce R. Heaton (hereinafter "Mr. Heaton"), is a natural person who resides in Pickens County, Georgia.

2. Mr. Heaton is an individual and is, therefore, a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

3. Plaintiff, Kathy A. Heaton (hereinafter "Ms. Heaton"), is a natural person who resides in Pickens County, Georgia.

4. Ms. Heaton is an individual and is, therefore, a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

5. Defendant, Equifax Information Services, LLC (hereinafter "Equifax"), is a limited liability corporation formed under the laws of the State of Georgia. Equifax may be served with process via its registered agent, Shawn Baldwin, at 1550 Peachtree Street NE, Suite H46, Atlanta, Georgia 30309-2402.

6. Equifax regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties and uses interstate commerce to prepare and/or furnish the reports. Accordingly, Equifax is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f).

## JURISDICTION AND VENUE

7. This Court has federal question jurisdiction over Plaintiffs' Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq*., claims, pursuant to 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

8. This Court has personal jurisdiction over Defendant, pursuant to O.C.G.A. § 9-10-91(1), because, *inter alia*, Defendant frequently and routinely conducts business in the State of Georgia, including the conduct complained of herein.

9. Pursuant to 28 U.S.C. § 1391, venue is proper in the Northern District of Georgia because a substantial part of the events or omissions giving rise to the claims occurred in this district. Pursuant to LR 3.1B(3), NDGa, venue is proper in the Atlanta Division because Defendant maintains an agent for service of process within the Atlanta Division.

**Factual Allegations Derived from Plaintiffs' First Mortgage**

10. On or about May 16, 2003, Plaintiffs obtained a loan from Crescent Mortgage Services, Inc. for the original principal amount of $116,800.00 (the "First Mortgage").

11. The First Mortgage is collateralized by residential real property located at 381 Whispering Waters Drive, Jasper, Georgia 30143-8987, as evidenced by the Security Deed recorded at Deed Book 535, Page 538, in the Superior Court of Pickens County.

12. On or about February 16, 2012, the First Mortgage was transferred from Crescent Mortgage Services, Inc. to JPMorgan Chase Bank, N.A. (hereinafter "Chase"), as evidenced by the Assignment recorded at Deed Book 953, Page 157, in the Superior Court of Pickens County.

**Factual Allegations Derived from Plaintiffs' Second Mortgage**

13. On or about April 18, 2007, Plaintiffs obtained a loan from Wachovia Bank, N.A. for the original principal amount of $50,500.00 (the "Second Mortgage").

14. The Second Mortgage is collateralized by residential real property located at 381 Whispering Waters Drive, Jasper, Georgia 30143-8987, as evidenced by the Security Deed recorded at Deed Book 772, Page 259, in the Superior Court of Pickens County.

15. On or about December 31, 2008, Wachovia Bank, N.A. merged with Wells Fargo Bank, National Association (Inc.), as successor by merger to Wells Fargo Home Mortgage (hereinafter "Wells Fargo"), and Wells Fargo took over servicing of all accounts, including the Second Mortgage at issue in this lawsuit.

**Factual Allegations Derived from Plaintiffs' Bankruptcy Case**

16. On December 21, 2011, Plaintiffs filed a Chapter 13 Voluntary Bankruptcy Petition in the United States Bankruptcy Court for the Northern District of Georgia, Gainesville Division, Case Number 11-25212 (the "Bankruptcy Case").

17. In Schedule D of their Bankruptcy Petition, Plaintiffs listed the First Mortgage and Second Mortgage (collectively, the "Mortgages") as secured claims in the amounts of $82,457.00 and $42,490.00, respectively.

18. On February 7, 2012, Plaintiffs filed their Chapter 13 Plan in accordance with 11 U.S.C. § 1322(b)(5), providing for the cure of any then-deficiencies and the direct payment of all future Mortgage payments by Plaintiffs to Chase and Wells Fargo.

19. On February 7, 2012, Wells Fargo filed a Proof of Claim in Plaintiffs' Bankruptcy Case, claim number 7, representing it was owed $42,560.45.

20. On February 29, 2012, Plaintiffs' Plan was confirmed and became *res judicata* as to Plaintiffs and Chase and Wells Fargo.

21. Chase and Wells Fargo were served with copies of the Confirmation Order on March 2, 2017, by the Bankruptcy Noticing Center.

22. On April 26, 2012, Chase filed a Proof of Claim in Plaintiffs' Bankruptcy Case, claim number 18, representing it was owed $81,927.71, inclusive of $111.22 in arrearages.

23. On February 21, 2017, the Bankruptcy Court issued an Order of Discharge in favor of Plaintiffs. The Bankruptcy Court order specifically excluded from discharge, however, any debt provided for under 11 U.S.C. § 1322(b)(5), such as Plaintiffs' Mortgages. The applicable language of the Order is set forth below:

> **Most debts are discharged**
> Most debts are covered by the discharge, but not all. Generally, a discharge removes the debtors' personal liability for debts provided for by the chapter 13 plan.
>
> In a case involving community property: Special rules protect certain community property owned by the debtor's spouse, even if that spouse did not file a bankruptcy case.
>
> **Some debts are not discharged**
> Examples of debts that are not discharged are:
>
> - debts provided for under 11 U.S.C. § 1322(b)(5) and on which the last payment or other transfer is due after the date on which the final payment under the plan was due;

24. The Mortgages owed to Chase and Wells Fargo have not been discharged and are not subject to discharge under 11 U.S.C. § 1328(a)(1). See, *In re Duke*, 447 B.R. 365 (Bankr. M.D. Ga. 2011).

25. As recently as February 2, 2017, Wells Fargo advised the Bankruptcy Court and Plaintiffs that Plaintiffs' Mortgage was being serviced by Wells Fargo and that Plaintiffs' obligation is ongoing.

26. As recently as February 6, 2017, Chase advised the Bankruptcy Court and Plaintiffs that Plaintiffs' First Mortgage was being serviced by Chase and that Plaintiffs' obligation is ongoing.

27. Accordingly, Plaintiffs have continued to make, and Chase and Wells Fargo have continued to service and accept, Plaintiffs' Mortgage payments post-discharge.

**Factual Allegations Pertinent to CDIA and Metro 2 Reporting Standards**

28. The reporting of consumer credit information by credit reporting agencies ("CRAs") and data furnishers is the foundation of credit risk scoring and impacts the financial lives of consumers in innumerable ways, including the availability and cost of credit, housing opportunities, leasing prospects, insurance availability and cost, utility service, and even employment. Between two and three million consumer reports are issued by credit bureaus each day. See, *http://www.cdiaonline.org/about.cfm*.

29. The Consumer Data Industry Association ("CDIA") is an international trade association, representing over 140 members involved in credit reporting, mortgage reporting, check verification, tenant and employment screening, collection services, and fraud verification services, and the CDIA is active in both federal and state legislative affairs, public relations, education, and the promulgation of industry standards.

30. Because consumer credit reporting information is such sensitive data that has far reaching implications for most, if not all, consumers, the CDIA works together with CRAs to develop, maintain and enhance industry-standard reporting formats and guidelines.

31. To further assist CRAs and data furnishers with performing their due diligence and reporting accurate, complete, and timely data, in satisfaction of the FCRA's legal requirements, the CDIA offers extensive training, education, and support to CRAs and data furnishers.

32. The CDIA's extensive training and support offerings include FCRA certification programs for both CRAs and data furnishers to assist each in maintaining compliance with FCRA regulations.

33. Because standardized methods are of paramount importance to the accurate, complete and timely reporting of consumer credit data, the CDIA can and will revoke FCRA certification for failure to adhere to the standards set by the CDIA.

34. In cooperation with the major CRAs, CDIA publishes the Metro 2 ("Metro 2") reporting standards to assist furnishers with their compliance requirements under the FCRA. CDIA's reporting products are used in more than nine billion transactions each year.

See, *http://www.cdiaonline.org/about/index.cfm?unItemNumber=515*

35. The Metro 2 Format Task Force is comprised of representatives from Equifax, Experian, Innovis, and TransUnion, and is supported by the CDIA. Metro 2 Format Task Force's mission is to provide a standardized method for the reporting of accurate, complete, and timely data, and has developed the Metro 2 standards. *Id.*

36. The Metro 2 standards provide uniformity in the reporting and interpretation of credit data, including credit risk scoring.

37. It is axiomatic that in the world of consumer credit information reporting, as long as a consumer credit account is open, every month some piece of

information regarding that account/consumer is going to change. For example, interest continues to accrue, payments are made, etc.

38. 15 U.S.C. § 1681e(b) requires consumer reporting agencies to follow reasonable procedures to assure maximum possible accuracy of information concerning the individual about whom a report relates. Further, 15 U.S.C. § 1681s-2(a)(2) requires furnishers of information to regularly correct and update the information they previously provided to consumer reporting agencies to make sure the information is complete and accurate.

39. Accordingly, and in furtherance of its mission, the Metro 2 Format Task Force has developed an industry standard for reporting consumer accounts that "will ensure the integrity and consistency of the credit information being reported." As part of that industry standard the Metro 2 Format Task Force has declared, "All accounts must be reported on a monthly basis." (Emphasis added.) *Id.*

40. Because consumer credit information changes monthly, failure to update that information on a monthly basis, yet still publishing reports containing the previously reported information without updates, means that the information being reported is almost certainly incomplete and inaccurate.

41. The Fair Isaac Corporation credit risk scoring system, commonly referred to as FICO, is the leading credit scoring system, and utilizes data reported by credit reporting agencies and furnishers which are, ostensibly, in compliance with Metro 2 standards.

42. The failure to adhere to CDIA guidelines and the Metro 2 reporting standards can adversely affect a consumer's FICO score.

43. At all times relevant hereto, Equifax has required all entities to whom it grants consumer information reporting rights and access to adhere to the Metro 2 reporting guidelines as a condition of such ability and access.

44. Defendant has actual knowledge that entities that perform credit risk scoring, and other functions utilizing the data reported by Defendant, assume Defendant's compliance with Metro 2 standards in reporting consumer information.

45. The failure on the part of a CRA and/or a furnisher to adhere to the accepted Metro 2 standards increases the probability of a reported item being false or materially misleading to users of consumer reports, as those users assume that the information in the consumer reports is being reported in compliance with Metro 2 standards, and thus interpret that information accordingly.

46. As a result, failure to adhere accepted Metro 2 standards in reporting information in consumer reports adversely affects consumers, as it causes inconsistent, misleading, and/or incorrect interpretation of information regarding consumers.

47. The failure on the part of a CRA and/or a furnisher to adhere to the accepted Metro 2 standards can itself support a finding of willful violation as described by 15 U.S.C. § 1681n when that failure results in a report that is false, incomplete, and misleading.

48. Further, the failure to adhere to the Metro 2 format, and/or the failure to follow the guidance of regulatory and industry sources, such as the CDIA, is evidence of willfulness of an FCRA violation under 15 U.S.C. § 1681n(a). See, *Gillespie v. Equifax Info. Servs., LLC*, No. 05C138, 2008 WL 4316950, at *8 (N.D. Ill. Sept. 15, 2008).

49. As an integral aspect of its duties under the FCRA, Equifax is required to have in place adequate and reasonable policies and procedures to assure the maximum possible accuracy of information concerning individuals about whom Equifax produces reports; the requirement to maintain reasonable procedures

extends to Equifax's handling and reinvestigation of disputed information. At all times relevant hereto, Equifax adopted and implemented the CDIA guidelines and Metro 2 format as a means of fulfilling its aforementioned duties under the FCRA.

50. Equifax, in conjunction with the other major credit reporting agencies, developed a browser-based software system that allows credit reporting agencies to electronically notify furnishers of disputed credit reporting and for furnishers to respond to such disputes following investigation. The system is commonly referred to as e-OSCAR and was designed to be Metro 2 compliant. See, *http://www.e-oscar.org/*

51. In order for information in consumer files and on consumer reports to be reported consistently and correctly, and with maximum possible accuracy, users of the e-Oscar system must comply with accepted Metro 2 standards. Otherwise, the information contained in the resulting consumer reports is not consistent or uniform and is subject to gross misinterpretation by users of consumer reports.

**<u>Factual Allegations Derived from Reporting to and by Equifax on Mr. Heaton</u>**

52. On or about April 7, 2017, Mr. Heaton obtained a copy of his consumer report as published by Equifax.

53. That report contained erroneous information as published and reported by Equifax regarding the First Mortgage with Chase.

54. Specifically, the report shows the First Mortgage as having a $0.00 balance and a last payment date of December 1, 2011.

55. The relevant portion of the Chase tradeline appeared in the April 7, 2017, Equifax report as follows:

| | | | |
|---|---|---|---|
| High Credit | | Owner | JOINT_CONTRACTUAL_LIABILITY |
| Credit Limit | | Account Type | MORTGAGE |
| Terms Frequency | UNKNOWN | Term Duration | 0 |
| Balance | $0 | Date Opened | May 16, 2003 |
| Amount Past Due | $0 | Date Reported | Dec 21, 2011 |
| Actual Payment Amount | | Date of Last Payment | Dec 01, 2011 |
| Date of Last Activity | | Scheduled Payment Amount | |
| Months Reviewed | 99 | Delinquency First Reported | |
| Activity Designator | | Creditor Classification | UNKNOWN |
| Deferred Payment Start Date | | Charge Off Amount | |
| Balloon Payment Date | | Balloon Payment Amount | |
| Loan Type | Conventional Real Estate Mortgage | Date Closed | |
| Date of First Delinquency | Dec 01, 2011 | | |

**Comments**

Bankruptcy chapter 13

Fixed rate

Bankruptcy completed

**Contact**

CHASE MTG
PO Box 24696
Columbus, OH 43224-0696
1-800-848-9136

(Remaining portion of tradeline omitted.)

56. The April 7, 2017 Equifax report also contained erroneous information as published and reported by Equifax regarding the Second Mortgage with Wells Fargo.

57. Specifically, the report shows the Second Mortgage as having a $0.00 balance and a last payment date of December 1, 2011.

58. The relevant portion of the Wells Fargo tradeline appeared in the April 7, 2017, Equifax report as follows:

| | | | |
|---|---|---|---|
| High Credit | | Owner | JOINT_CONTRACTUAL_LIABILITY |
| Credit Limit | $50,500 | Account Type | MORTGAGE |
| Terms Frequency | UNKNOWN | Term Duration | 0 |
| Balance | $0 | Date Opened | Apr 18, 2007 |
| Amount Past Due | $0 | Date Reported | Dec 21, 2011 |
| Actual Payment Amount | | Date of Last Payment | Dec 01, 2011 |
| Date of Last Activity | | Scheduled Payment Amount | |
| Months Reviewed | 56 | Delinquency First Reported | Dec 01, 2011 |
| Activity Designator | | Creditor Classification | UNKNOWN |
| Deferred Payment Start Date | | Charge Off Amount | |
| Balloon Payment Date | | Balloon Payment Amount | |
| Loan Type | | Date Closed | |
| Date of First Delinquency | Oct 01, 2011 | | |

**Comments**

Bankruptcy chapter 13
Bankruptcy completed

**Contact**

WELLS FARGO HOME EQUITY
MT

(Remaining portion of tradeline omitted.)

59. Because the balance of the Mortgages owing to Chase and Wells Fargo are not $0.00, and because Plaintiffs' Mortgages owing to Chase and Wells Fargo were not discharged in bankruptcy, and because Plaintiffs continue to make payments to Chase and Wells Fargo, the information described above was both false and misleading.

60. Further, the specific reporting described above was in derogation of accepted industry standards for reporting the account as set forth by the CDIA and Metro 2 and as adopted by Defendant. See e.g., 2015 CDIA Credit Reporting Resource Guide ("2015 Metro 2").

61. In a letter dated August 31, 2017, Mr. Heaton disputed the inaccurate and misleading information directly to Equifax and advised Equifax that the Mortgages were included in his Bankruptcy Case but were not discharged and are reporting incorrectly as to the current status, payment history, and balance. The relevant portion of Mr. Heaton's dispute is reproduced below:

> Wells Fargo Home Equity, P.O. Box 31557, Billings, Montana 59107, account number XXXXXXXXXXXXX1998; and Chase Mortgage, P.O. Box 24696, Columbus, Ohio 43224-0696, account number XXXXXXXXX7636, are reporting incorrectly as to the current statuses, payment histories and balances. The accounts were included in my bankruptcy case filed on December 21, 2011, case number 11-25212. But the accounts were not discharged with the case on February 21, 2017. The balances are not $0 and I continue to make payments per the terms of the accounts. They are long-term debts, as the accounts indicate, and fall under § 1322(b)(5) of the bankruptcy code. I have included my confirmed plan listing these accounts in the mortgages section and a copy of the Bankruptcy Court Discharge Order, highlighted, so that so that you can verify its exception from Discharge, as well as a recent payoff statement from both mortgage companies. Please forward these documents to the furnishers, confirm my balance and payments and correct this report.

62. In support of Mr. Heaton's dispute and to assist Defendant's investigations, Mr. Heaton included with his dispute the following documents: a copy of Plaintiffs' Confirmed Chapter 13 Plan, showing the Mortgages as long-term debts and thus exempt from discharge under 11 U.S.C. § 1328(a)(1); a copy of the discharge order exempting debts such as those held by Chase and Wells Fargo from discharge; and recent payoff statements for each account showing the continuation of Plaintiffs' obligations.

63. Pursuant to 15 U.S.C. § 1681i, Equifax had a duty to notify Chase and Wells Fargo of Mr. Heaton's dispute within five business days of receiving the dispute, to forward the attached documents for Chase and Wells Fargo's review, to conduct a reasonable reinvestigation of the disputed information, and to correct the tradeline or delete it from Mr. Heaton's consumer file.

64. Equifax failed to notify both Chase and Wells Fargo of Mr. Heaton's dispute and to provide the supporting documents, as required by 15 U.S.C. § 1681i.

65. Pursuant to 15 U.S.C. § 1681s-2, Chase and Wells Fargo had a duty to conduct an investigation with respect to the disputed information and to modify or delete that information appropriately.

66. In a document dated September 8, 2017, Equifax advised Mr. Heaton that it had researched the dispute, and provided a "revised report" that reflected its findings. Equifax provided a copy of the tradeline as reported "post-investigation", which reproduced the errors identified by Mr. Heaton in his original dispute letter.

67. Specifically, the Chase tradeline appeared in the revised September 8, 2017, Equifax report as follows:

**Chase MTG PO Box 24696 Columbus OH 43224-0696 : (800) 848-9136**

| Account Number | Date Opened | High Credit | Credit Limit | Terms Duration | Terms Frequency | Months Revd | Activity Designator | Creditor Classification |
|---|---|---|---|---|---|---|---|---|
| 465190742* | 05/16/2003 | $0 | $0 | | | 99 | | |

| Items As of Date Reported | Balance Amount | Amount Past Due | Date of Last Paymnt | Actual Paymnt Amount | Scheduled Paymnt Amount | Date of 1st Delinquency | Date of Last Activity | Date Maj. Del. 1st Rptd | Charge Off Amount | Deferred Pay Start Date | Balloon Pay Amount | Balloon Pay Date | Date Closed |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 12/21/2011 | $0 | $0 | 12/2011 | $0 | $0 | 12/2011 | | | $0 | | $0 | | |

Status - Included In Wage Earner Plan; Type of Loan - Conventional Re Mortgage; Whose Account - Joint Account; ADDITIONAL INFORMATION - Bankruptcy Chapter 13; Fixed Rate; Bankruptcy Completed;

68. Additionally, the Wells Fargo tradeline appeared in the revised September 8, 2017, Equifax report as follows:

**Wells FARGO Home Equity** B 6955-019 PO Box 31557 Billings MT 59107-1557

| Account Number | Date Opened | High Credit | Credit Limit | Terms Duration | Terms Frequency | Months Revd | Activity Designator | Creditor Classification |
|---|---|---|---|---|---|---|---|---|
| 6816815563968* | 04/18/2007 | $0 | $50,500 | | | 56 | | |

| Items As of Date Reported | Balance Amount | Amount Past Due | Date of Last Paymnt | Actual Paymnt Amount | Scheduled Paymnt Amount | Date of 1st Delinquency | Date of Last Activity | Date Maj. Del. 1st Rptd | Charge Off Amount | Deferred Pay Start Date | Balloon Pay Amount | Balloon Pay Date | Date Closed |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 12/21/2011 | $0 | $0 | 12/2011 | $0 | $0 | 10/2011 | | 12/2011 | $0 | | $0 | | |

Status - Included In Wage Earner Plan; Type of Loan - Home Equity Line Of Credit; Whose Account - Joint Account; ADDITIONAL INFORMATION - Bankruptcy Chapter 13; Home Equity Loan; Bankruptcy Completed;

69. The post-investigation reporting of Defendant is false and misleading.

70. The post-investigation reporting of Defendant is in derogation of the Metro 2 reporting standards, and that departure and failure to adhere to the adopted guidelines renders the reporting both false and materially misleading, as users of consumer reports assume Defendant's compliance with Metro 2 standards in reporting consumer information.

71. There is no indication in the tradeline of the "verified" report that Mr. Heaton has disputed the information reported and published by Equifax. The failure to note the legitimate dispute by Mr. Heaton of the relevant tradeline renders the reporting materially misleading.

**<u>Factual Allegations Derived from Reporting to and by Equifax on Ms. Heaton</u>**

72. On or about April 7, 2017, Ms. Heaton obtained a copy of her consumer report as published by Equifax.

73. That report contained erroneous information as published and reported by Equifax regarding the First Mortgage with Chase.

74. Specifically, the report shows the First Mortgage as having a $0.00 balance and a last payment date of December 1, 2011.

75. The relevant portion of the Chase tradeline appeared in the April 7, 2017, Equifax report as follows:

| | | | |
|---|---|---|---|
| High Credit | | Owner | JOINT_CONTRACTUAL_LIABILITY |
| Credit Limit | | Account Type | MORTGAGE |
| Terms Frequency | UNKNOWN | Term Duration | 0 |
| Balance | $0 | Date Opened | May 16, 2003 |
| Amount Past Due | $0 | Date Reported | Dec 21, 2011 |
| Actual Payment Amount | | Date of Last Payment | Dec 01, 2011 |
| Date of Last Activity | | Scheduled Payment Amount | |
| Months Reviewed | 99 | Delinquency First Reported | |
| Activity Designator | | Creditor Classification | UNKNOWN |
| Deferred Payment Start Date | | Charge Off Amount | |
| Balloon Payment Date | | Balloon Payment Amount | |
| Loan Type | Conventional Real Estate Mortgage | Date Closed | |
| Date of First Delinquency | Dec 01, 2011 | | |

**Comments**

Bankruptcy chapter 13
Fixed rate
Bankruptcy completed

**Contact**

CHASE MTG
PO Box 24696
Columbus, OH 43224-0696
1-800-848-9136

(Remaining portion of tradeline omitted.)

76. The April 7, 2017 Equifax report also contained erroneous information as published and reported by Equifax regarding the Second Mortgage with Wells Fargo.

77. Specifically, the report shows the Second Mortgage as having a $0.00 balance and a last payment date of December 1, 2011.

78. The relevant portion of the Wells Fargo tradeline appeared in the April 7, 2017, Equifax report as follows:

| | | | |
|---|---|---|---|
| High Credit | | Owner | JOINT_CONTRACTUAL_LIABILITY |
| Credit Limit | $50,500 | Account Type | MORTGAGE |
| Terms Frequency | UNKNOWN | Term Duration | 0 |
| Balance | $0 | Date Opened | Apr 18, 2007 |
| Amount Past Due | $0 | Date Reported | Dec 21, 2011 |
| Actual Payment Amount | | Date of Last Payment | Dec 01, 2011 |
| Date of Last Activity | | Scheduled Payment Amount | |
| Months Reviewed | 56 | Delinquency First Reported | Dec 01, 2011 |
| Activity Designator | | Creditor Classification | UNKNOWN |
| Deferred Payment Start Date | | Charge Off Amount | |
| Balloon Payment Date | | Balloon Payment Amount | |
| Loan Type | | Date Closed | |
| Date of First Delinquency | Oct 01, 2011 | | |

**Comments**

Bankruptcy chapter 13
Bankruptcy completed

**Contact**

WELLS FARGO HOME EQUITY
MT

(Remaining portion of tradeline omitted.)

79. Because the balance of the Mortgages owing to Chase and Wells Fargo are not $0.00, and because Plaintiffs' Mortgages owing to Chase and Wells Fargo were not discharged in bankruptcy, and because Plaintiffs continue to make payments to Chase and Wells Fargo, the information described above was both false and misleading.

80. Further, the specific reporting described above was in derogation of accepted industry standards for reporting the account as set forth by the CDIA and Metro 2 and as adopted by Defendant. See e.g., 2015 CDIA Credit Reporting Resource Guide ("2015 Metro 2").

81. In a letter dated August 31, 2017, Ms. Heaton disputed the inaccurate and misleading information directly to Equifax and advised Equifax that the Mortgages were included in her Bankruptcy Case but were not discharged and are reporting incorrectly as to the current status, payment history, and balance. The relevant portion of Ms. Heaton's dispute is reproduced below:

> Wells Fargo Home Equity, P.O. Box 31557, Billings, Montana 59107, account number XXXXXXXXXXXXX1998; and Chase Mortgage, P.O. Box 24696, Columbus, Ohio 43224-0696, account number XXXXXXXXX7636, are reporting incorrectly as to the current statuses, payment histories and balances. The accounts were included in my bankruptcy case filed on December 21, 2011, case number 11-25212. But the accounts were not discharged with the case on February 21, 2017. The balances are not $0 and I continue to make payments per the terms of the accounts. They are long-term debts, as the accounts indicate, and fall under § 1322(b)(5) of the bankruptcy code. I have included my confirmed plan listing these accounts in the mortgages section and a copy of the Bankruptcy Court Discharge Order, highlighted, so that so that you can verify its exception from Discharge, as well as a recent payoff statement from both mortgage companies. Please forward these documents to the furnishers, confirm my balance and payments and correct this report.

82. In support of Ms. Heaton's dispute and to assist Defendant's investigations, Ms. Heaton included with her dispute the following documents: a copy of Plaintiffs' Confirmed Chapter 13 Plan, showing the Mortgages as long-term debts and thus exempt from discharge under 11 U.S.C. § 1328(a)(1); a copy of the discharge order exempting debts such as those held by Chase and Wells Fargo from discharge; and recent payoff statements showing the continuation of Plaintiffs' obligations.

83. Pursuant to 15 U.S.C. § 1681i, Equifax had a duty to notify Chase and Wells Fargo of Ms. Heaton's dispute within five business days of receiving the dispute, to forward the attached documents for Chase and Wells Fargo's review, to conduct a reasonable reinvestigation of the disputed information, and to correct the tradeline or delete it from Ms. Heaton's consumer file.

84. Equifax failed to notify Chase and Wells Fargo and to provide the supporting documents, as required by 15 U.S.C. § 1681i.

85. Pursuant to 15 U.S.C. § 1681s-2, Chase and Wells Fargo had a duty to conduct an investigation with respect to the disputed information and to modify or delete that information appropriately.

86. In a document dated September 8, 2017, Equifax advised Ms. Heaton that it had researched the dispute, and provided a "revised report" that reflected its findings. Equifax provided a copy of the tradeline as reported "post-investigation", which reproduced the errors identified by Ms. Heaton in her original dispute letter.

87. Specifically, the Chase tradeline appeared in the revised September 8, 2017, Equifax report as follows:

**Chase MTG PO Box 24696 Columbus OH 43224-0696 : (800) 848-9136**

| Account Number | Date Opened | High Credit | Credit Limit | Terms Duration | Terms Frequency | Months Revd | Activity Designator | Creditor Classification |
|---|---|---|---|---|---|---|---|---|
| 465190742* | 05/16/2003 | $0 | $0 | | | 99 | | |

| Items As of Date Reported | Balance Amount | Amount Past Due | Date of Last Paymnt | Actual Paymnt Amount | Scheduled Paymnt Amount | Date of 1st Delinquency | Date of Last Activity | Date Maj. Del. 1st Rptd | Charge Off Amount | Deferred Pay Start Date | Balloon Pay Amount | Balloon Pay Date | Date Closed |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 12/21/2011 | $0 | $0 | 12/2011 | $0 | $0 | 12/2011 | | | $0 | | $0 | | |

Status - Included In Wage Earner Plan; Type of Loan - Conventional Re Mortgage; Whose Account - Joint Account; ADDITIONAL INFORMATION - Bankruptcy Chapter 13; Fixed Rate; Bankruptcy Completed;

88. Additionally, the Wells Fargo tradeline appeared in the revised September 8, 2017, Equifax report as follows:

**Wells FARGO Home Equity** **B 6955-019 PO Box 31557 Billings MT 59107-1557**

| Account Number | Date Opened | High Credit | Credit Limit | Terms Duration | Terms Frequency | Months Revd | Activity Designator | Creditor Classification |
|---|---|---|---|---|---|---|---|---|
| 6816815563968* | 04/18/2007 | $0 | $50,500 | | | 56 | | |

| Items As of Date Reported | Balance Amount | Amount Past Due | Date of Last Paymnt | Actual Paymnt Amount | Scheduled Paymnt Amount | Date of 1st Delinquency | Date of Last Activity | Date Maj. Del. 1st Rptd | Charge Off Amount | Deferred Pay Start Date | Balloon Pay Amount | Balloon Pay Date | Date Closed |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 12/21/2011 | $0 | $0 | 12/2011 | $0 | $0 | 10/2011 | | 12/2011 | $0 | | $0 | | |

Status - Included In Wage Earner Plan; Type of Loan - Home Equity Line Of Credit; Whose Account - Joint Account; ADDITIONAL INFORMATION - Bankruptcy Chapter 13; Home Equity Loan; Bankruptcy Completed;

89. The post-investigation reporting of Defendant is false and misleading.

90. The post-investigation reporting of Defendant is in derogation of the Metro 2 reporting standards, and that departure and failure to adhere to the adopted guidelines renders the reporting both false and materially misleading, as users of consumer reports assume Defendant's compliance with Metro 2 standards in reporting consumer information.

91. There is no indication in the tradeline of the "verified" report that Ms. Heaton has disputed the information reported and published by Equifax. The failure to note the legitimate dispute by Ms. Heaton of the relevant tradeline renders the reporting materially misleading.

## Damages

92. The reporting of Defendant breached its duties as described herein.

93. Defendant had actual notice that the information it was reporting regarding Plaintiffs and the Mortgages was false, deceptive, and misleading.

94. Defendant failed to correct its false, deceptive, and misleading reporting as described herein.

95. Defendant continued to report the false, deceptive, and misleading information regarding Plaintiffs and the Mortgages.

96. Accordingly, Defendant's conduct was willful.

97. Upon information and belief, Defendant has published the false and misleading information regarding Plaintiffs to third parties.

98. As a result of Defendant's willful actions and omissions, Plaintiffs are eligible for statutory damages.

99. Additionally, as a result of Defendant's actions and omissions, Plaintiffs have suffered actual damages, including out-of-pocket expenses in challenging Defendant's wrongful representations regarding the Mortgages.

100. Realizing that Defendant has, in effect, deprived Plaintiffs of years of positive credit reporting on the most important accounts Plaintiffs have, and that Defendant continues to do so as a result of its failures to comply with the statutory requirements of 15 U.S.C. § 1681 et seq., Plaintiffs have experienced severe worry,

frustration and anxiety that interfere with their activities of daily living and adversely affect their interpersonal relationships.

101. As a result of the actions and omissions of Defendant, Plaintiffs' actual damages also include the illegitimate suppression of their Fair Isaac Corporation ("FICO") credit scores and other credit rating modeling scores.

102. Defendant's failures to correct and clear the inaccuracies in Plaintiffs' Equifax reports creates a material risk of financial harm to Plaintiffs stemming from the decreased perception of Plaintiffs' credit-worthiness.

## CAUSES OF ACTION

### COUNT I

### VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. §§ 1681e(b) and 1681i – Failure to Investigate Dispute by Royce R. Heaton of Wells Fargo Tradeline

103. Plaintiffs incorporate by reference paragraphs 1 through 71 and 92 through 102 as though fully stated herein.

104. Pursuant to 15 U.S.C. § 1681e(b), Equifax is responsible for following reasonable procedures to assure maximum possible accuracy of information whenever it prepares consumer reports.

105. Equifax's duty under 15 U.S.C. § 1681e(b) extends to reinvestigation reports and consumer disclosures.

106. Pursuant to 15 U.S.C. § 1681i(a)(1)(A), Equifax had an affirmative duty to independently investigate the dispute submitted by Mr. Heaton as to the Wells Fargo tradeline.

107. Pursuant to 15 U.S.C. § 1681i(a)(2), Equifax was required to communicate the specifics of Mr. Heaton's dispute to Chase, including the forwarding of any documents provided by Mr. Heaton in support of that dispute.

108. A consumer reporting agency's reasonable reinvestigation must be a good faith effort to ascertain the truth; a reasonable reinvestigation must answer the substance of the consumer's dispute, and may not merely be a *pro forma* record review that simply begs the question.

109. In order to conduct a reasonable reinvestigation, and pursuant to 15 U.S.C. § 1681i(a)(4), Equifax was required to review and consider all relevant information submitted by Mr. Heaton.

110. Mr. Heaton's dispute was clear and unambiguous as to the inaccuracies of Equifax's reporting.

111. Mr. Heaton provided all the relevant information necessary for Equifax to reinvestigate and correct the inaccuracies in its reporting.

112. Equifax breached its duties as described herein.

113. If Equifax had conducted a reasonable reinvestigation of Mr. Heaton's dispute, Equifax would have reviewed and considered all of the information Mr. Heaton submitted in his dispute letter and would have easily detected that what was being reported was factually incorrect, inaccurate, and misleading.

114. If Equifax had conducted a reasonable reinvestigation of Mr. Heaton's dispute, the tradeline on Mr. Heaton's Equifax consumer report would have been appropriately corrected.

115. Due to Equifax's failures to follow reasonable procedures to assure maximum possible accuracy of information and failures to conduct a reasonable reinvestigation of Mr. Heaton's dispute, the false and misleading information in Mr. Heaton's credit file and on Mr. Heaton's Equifax report was not appropriately modified.

116. Equifax had all the information necessary to correct its reporting. Yet, Equifax failed to correct the information in the face of clear evidence that its reporting

was false and misleading. The failure indicates that Equifax's review procedures were not reasonable.

117. The fact that Equifax had all the information necessary to correct its reporting, yet failed to do so in an appropriate manner, further indicates that Equifax recklessly disregarded Mr. Heaton's dispute and the requirements of the FCRA, amounting to a willful violation of the statute.

118. Equifax willfully, or in the alternative negligently, violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure the maximum possible accuracy of information concerning Mr. Heaton in his consumer reports, in reckless disregard of the statutory requirements, Mr. Heaton's dispute, and the publicly recorded Bankruptcy Case filings.

119. Equifax willfully, or in the alternative negligently, violated 15 U.S.C. § 1681i in multiple ways, including without limitation, by failing to conduct a reasonable reinvestigation of Mr. Heaton's dispute, and by failing thereafter to appropriately modify information in his file and on his consumer report in reckless disregard of the statutory requirements, Mr. Heaton's dispute, and the publicly recorded Bankruptcy Case filings.

120. As a result of Equifax's violations of 15 U.S.C. §§ 1681e(b) and 1681i, Mr. Heaton has suffered actual damages as described herein. Mr. Heaton is, therefore, entitled to recover actual damages from Equifax pursuant to 15 U.S.C. §§ 1681n and 1681o.

121. Equifax's actions and omissions were willful, rendering Equifax liable to Mr. Heaton for punitive damages and/or statutory damages pursuant to 15 U.S.C. § 1681n.

122. Mr. Heaton is entitled to recover costs and attorneys' fees from Equifax pursuant to 15 U.S.C. §§ 1681n and 1681o.

## COUNT II

## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT 15 U.S.C. §§ 1681e(b) and 1681i – Failure to Investigate Dispute by Royce R. Heaton of Chase Mortgage Tradeline

123. Plaintiffs incorporate by reference paragraphs 1 through 71 and 92 through 102 as though fully stated herein.

124. Pursuant to 15 U.S.C. § 1681e(b), Equifax is responsible for following reasonable procedures to assure maximum possible accuracy of information whenever it prepares consumer reports.

125. Equifax's duty under 15 U.S.C. § 1681e(b) extends to reinvestigation reports and consumer disclosures.

126. Pursuant to 15 U.S.C. § 1681i(a)(1)(A), Equifax had an affirmative duty to independently investigate the dispute submitted by Mr. Heaton of the Chase Mortgage tradeline.

127. Pursuant to 15 U.S.C. § 1681i(a)(2), Equifax was required to communicate the specifics of Mr. Heaton's dispute to Wells Fargo, including the forwarding of any documents provided by Mr. Heaton in support of that dispute.

128. A consumer reporting agency's reasonable reinvestigation must be a good faith effort to ascertain the truth; a reasonable reinvestigation must answer the substance of the consumer's dispute, and may not merely be a *pro forma* record review that simply begs the question.

129. In order to conduct a reasonable reinvestigation, and pursuant to 15 U.S.C. § 1681i(a)(4), Equifax was required to review and consider all relevant information submitted by Mr. Heaton.

130. Mr. Heaton's dispute was clear and unambiguous as to the inaccuracies of Equifax's reporting.

131. Mr. Heaton provided all the relevant information necessary for Equifax to reinvestigate and correct the inaccuracies in its reporting.

132. Equifax breached its duties as described herein.

133. If Equifax had conducted a reasonable reinvestigation of Mr. Heaton's dispute, Equifax would have reviewed and considered all of the information Mr. Heaton submitted in his dispute letter and would have easily detected that what was being reported was factually incorrect, inaccurate, and misleading.

134. If Equifax had conducted a reasonable reinvestigation of Mr. Heaton's dispute, the tradeline on Mr. Heaton s Equifax consumer report would have been appropriately corrected.

135. Due to Equifax's failures to follow reasonable procedures to assure maximum possible accuracy of information and failures to conduct a reasonable reinvestigation of Mr. Heaton's dispute, the false and misleading information in Mr. Heaton's credit file and on Mr. Heaton's Equifax report was not appropriately modified.

136. Equifax had all the information necessary to correct its reporting. Yet, Equifax failed to correct the information in the face of clear evidence that its reporting

was false and misleading. The failure indicates that Equifax's review procedures were not reasonable.

137. The fact that Equifax had all the information necessary to correct its reporting, yet failed to do so in an appropriate manner, further indicates that Equifax recklessly disregarded Mr. Heaton's dispute and the requirements of the FCRA, amounting to a willful violation of the statute.

138. Equifax willfully, or in the alternative negligently, violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure the maximum possible accuracy of information concerning Mr. Heaton in his consumer reports, in reckless disregard of the statutory requirements, Mr. Heaton's dispute, and the publicly recorded Bankruptcy Case filings.

139. Equifax willfully, or in the alternative negligently, violated 15 U.S.C. § 1681i in multiple ways, including without limitation, by failing to conduct a reasonable reinvestigation of Mr. Heaton's dispute, and by failing thereafter to appropriately modify information in his file and on his consumer report in reckless disregard of the statutory requirements, Mr. Heaton's dispute, and the publicly recorded Bankruptcy Case filings.

140. As a result of Equifax's violations of 15 U.S.C. §§ 1681e(b) and 1681i, Mr. Heaton has suffered actual damages as described herein. Mr. Heaton is, therefore, entitled to recover actual damages from Equifax pursuant to 15 U.S.C. §§ 1681n and 1681o.

141. Equifax's actions and omissions were willful, rendering Equifax liable to Mr. Heaton for punitive damages and/or statutory damages pursuant to 15 U.S.C. § 1681n.

142. Mr. Heaton is entitled to recover costs and attorneys' fees from Equifax pursuant to 15 U.S.C. §§ 1681n and 1681o.

**COUNT III**

**VIOLATIONS OF THE FAIR CREDIT REPORTING ACT**
**15 U.S.C. §§ 1681e(b) and 1681i – Failure to Investigate Dispute by Kathy A. Heaton of Wells Fargo Tradeline**

143. Plaintiffs incorporate by reference paragraphs 1 through 51 and 72 through 102 as though fully stated herein.

144. Pursuant to 15 U.S.C. § 1681e(b), Equifax is responsible for following reasonable procedures to assure maximum possible accuracy of information whenever it prepares consumer reports.

145. Equifax's duty under 15 U.S.C. § 1681e(b) extends to reinvestigation reports and consumer disclosures.

146. Pursuant to 15 U.S.C. § 1681i(a)(1)(A), Equifax had an affirmative duty to independently investigate the dispute submitted by Ms. Heaton as to the Wells Fargo tradeline.

147. Pursuant to 15 U.S.C. § 1681i(a)(2), Equifax was required to communicate the specifics of Ms. Heaton's dispute to Chase, including the forwarding of any documents provided by Ms. Heaton in support of that dispute.

148. A consumer reporting agency's reasonable reinvestigation must be a good faith effort to ascertain the truth; a reasonable reinvestigation must answer the substance of the consumer's dispute, and may not merely be a *pro forma* record review that simply begs the question.

149. In order to conduct a reasonable reinvestigation, and pursuant to 15 U.S.C. § 1681i(a)(4), Equifax was required to review and consider all relevant information submitted by Ms. Heaton.

150. Ms. Heaton's dispute was clear and unambiguous as to the inaccuracies of Equifax's reporting.

151. Ms. Heaton provided all the relevant information necessary for Equifax to reinvestigate and correct the inaccuracies in its reporting.

152. Equifax breached its duties as described herein.

153. If Equifax had conducted a reasonable reinvestigation of Ms. Heaton's dispute, Equifax would have reviewed and considered all of the information Ms. Heaton submitted in her dispute letter and would have easily detected that what was being reported was factually incorrect, inaccurate, and misleading.

154. If Equifax had conducted a reasonable reinvestigation of Ms. Heaton's dispute, the tradeline on Ms. Heaton's Equifax consumer report would have been appropriately corrected.

155. Due to Equifax's failures to follow reasonable procedures to assure maximum possible accuracy of information and failures to conduct a reasonable reinvestigation of Ms. Heaton's dispute, the false and misleading information in Ms. Heaton's credit file and on Ms. Heaton's Equifax report was not appropriately modified.

156. Equifax had all the information necessary to correct its reporting. Yet, Equifax failed to correct the information in the face of clear evidence that its reporting

was false and misleading. The failure indicates that Equifax's review procedures were not reasonable.

157. The fact that Equifax had all the information necessary to correct its reporting, yet failed to do so in an appropriate manner, further indicates that Equifax recklessly disregarded Ms. Heaton's dispute and the requirements of the FCRA, amounting to a willful violation of the statute.

158. Equifax willfully, or in the alternative negligently, violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure the maximum possible accuracy of information concerning Ms. Heaton in her consumer reports, in reckless disregard of the statutory requirements, Ms. Heaton's dispute, and the publicly recorded Bankruptcy Case filings.

159. Equifax willfully, or in the alternative negligently, violated 15 U.S.C. § 1681i in multiple ways, including without limitation, by failing to conduct a reasonable reinvestigation of Ms. Heaton's dispute, and by failing thereafter to appropriately modify information in her file and on her consumer report in reckless disregard of the statutory requirements, Ms. Heaton's dispute, and the publicly recorded Bankruptcy Case filings.

160. As a result of Equifax's violations of 15 U.S.C. §§ 1681e(b) and 1681i, Ms. Heaton has suffered actual damages as described herein. Ms. Heaton is, therefore, entitled to recover actual damages from Equifax pursuant to 15 U.S.C. §§ 1681n and 1681o.

161. Equifax's actions and omissions were willful, rendering Equifax liable to Ms. Heaton for punitive damages and/or statutory damages pursuant to 15 U.S.C. § 1681n.

162. Ms. Heaton is entitled to recover costs and attorneys' fees from Equifax pursuant to 15 U.S.C. §§ 1681n and 1681o.

**COUNT IV**

**VIOLATIONS OF THE FAIR CREDIT REPORTING ACT**
**15 U.S.C. §§ 1681e(b) and 1681i – Failure to Investigate Dispute by Kathy A. Heaton of Chase Mortgage Tradeline**

163. Plaintiffs incorporate by reference paragraphs 1 through 52 and 72 through 102 as though fully stated herein.

164. Pursuant to 15 U.S.C. § 1681e(b), Equifax is responsible for following reasonable procedures to assure maximum possible accuracy of information whenever it prepares consumer reports.

165. Equifax's duty under 15 U.S.C. § 1681e(b) extends to reinvestigation reports and consumer disclosures.

166. Pursuant to 15 U.S.C. § 1681i(a)(1)(A), Equifax had an affirmative duty to independently investigate the dispute submitted by Ms. Heaton as to the Chase Mortgage tradeline.

167. Pursuant to 15 U.S.C. § 1681i(a)(2), Equifax was required to communicate the specifics of Ms. Heaton's dispute to Wells Fargo, including the forwarding of any documents provided by Ms. Heaton in support of that dispute.

168. A consumer reporting agency's reasonable reinvestigation must be a good faith effort to ascertain the truth; a reasonable reinvestigation must answer the substance of the consumer's dispute, and may not merely be a *pro forma* record review that simply begs the question.

169. In order to conduct a reasonable reinvestigation, and pursuant to 15 U.S.C. § 1681i(a)(4), Equifax was required to review and consider all relevant information submitted by Ms. Heaton.

170. Ms. Heaton's dispute was clear and unambiguous as to the inaccuracies of Equifax's reporting.

171. Ms. Heaton provided all the relevant information necessary for Equifax to reinvestigate and correct the inaccuracies in its reporting.

172. Equifax breached its duties as described herein.

173. If Equifax had conducted a reasonable reinvestigation of Ms. Heaton's dispute, Equifax would have reviewed and considered all of the information Ms. Heaton submitted in her dispute letter and would have easily detected that what was being reported was factually incorrect, inaccurate, and misleading.

174. If Equifax had conducted a reasonable reinvestigation of Ms. Heaton's dispute, the tradeline on Ms. Heaton's Equifax consumer report would have been appropriately corrected.

175. Due to Equifax's failures to follow reasonable procedures to assure maximum possible accuracy of information and failures to conduct a reasonable reinvestigation of Ms. Heaton's dispute, the false and misleading information in Ms. Heaton's credit file and on Ms. Heaton's Equifax report was not appropriately modified.

176. Equifax had all the information necessary to correct its reporting. Yet, Equifax failed to correct the information in the face of clear evidence that its reporting

was false and misleading. The failure indicates that Equifax's review procedures were not reasonable.

177. The fact that Equifax had all the information necessary to correct its reporting, yet failed to do so in an appropriate manner, further indicates that Equifax recklessly disregarded Ms. Heaton's dispute and the requirements of the FCRA, amounting to a willful violation of the statute.

178. Equifax willfully, or in the alternative negligently, violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure the maximum possible accuracy of information concerning Ms. Heaton in her consumer reports, in reckless disregard of the statutory requirements, Ms. Heaton's dispute, and the publicly recorded Bankruptcy Case filings.

179. Equifax willfully, or in the alternative negligently, violated 15 U.S.C. § 1681i in multiple ways, including without limitation, by failing to conduct a reasonable reinvestigation of Ms. Heaton's dispute, and by failing thereafter to appropriately modify information in her file and on her consumer report in reckless disregard of the statutory requirements, Ms. Heaton's dispute, and the publicly recorded Bankruptcy Case filings.

180. As a result of Equifax's violations of 15 U.S.C. §§ 1681e(b) and 1681i, Ms. Heaton has suffered actual damages as described herein. Ms. Heaton is, therefore, entitled to recover actual damages from Equifax pursuant to 15 U.S.C. §§ 1681n and 1681o.

181. Equifax's actions and omissions were willful, rendering Equifax liable to Ms. Heaton for punitive damages and/or statutory damages pursuant to 15 U.S.C. § 1681n.

182. Ms. Heaton is entitled to recover costs and attorneys' fees from Equifax pursuant to 15 U.S.C. §§ 1681n and 1681o.

## TRIAL BY JURY

Plaintiffs are entitled to and hereby request a trial by jury.

**WHEREFORE**, Plaintiffs pray that judgment be entered in their favor and against Defendant for:

a.) Plaintiffs' actual damages;

b.) Punitive and/or statutory damages, pursuant to 15 U.S.C. § 1681n;

c.) Reasonable attorney's fees and costs, pursuant to 15 U.S.C. §§ 1681n and/or 1681o; and

d.) Such other and further relief as may be just and proper.

Respectfully submitted this 9th day of October, 2017.

**BERRY & ASSOCIATES**

*/s/ Matthew T. Berry*
Matthew T. Berry
Georgia Bar No.: 055663
*matt@mattberry.com*
Paul J. Sieg
Georgia Bar No.: 334182
*psieg@mattberry.com*
2751 Buford Highway, Suite 600
Atlanta, GA 30324
Ph. (404) 235-3334
Fax (404) 235-3333

*Plaintiffs' Attorneys*